[No. 3188–2. Division Two. July 13, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. SHARON JOSIE CRIGLER, *Appellant.*

---

*Mary A. Theiler,* for appellant (appointed counsel for appeal).

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PETRIE, J.—Sharon Josie Crigler appeals from an order denying her motion for new trial following a jury verdict which found her guilty of the crime of first–degree manslaughter and also found that she was armed with a firearm at the time of the commission of the crime.

At trial she acknowledged that she fired a .22 caliber weapon through the door of her apartment while the victim was on the other side of the door rattling keys in the lock. She asserted the homicide was justified as an act of self–defense. We hold the jury was not properly instructed on the law of self–defense. Accordingly, we reverse and remand for new trial.

If believed by a jury, the following fact pattern supportive of her theory of the case would emerge. Ms. Crigler, age 21, and the victim, Keith Rolland, age 24, had lived together in an apartment for several months prior to May 10, 1977. Their life together was often stormy; and, when provoked, he brutally beat her on several occasions. On May 10, following one of the more stormy occasions in which he punched her repeatedly about the mouth, he moved into another apartment complex several miles away.

On May 13, ostensibly to effect a reconciliation, she went to his apartment, found another woman in his bed, and, in his absence, stuck her foot through one of his paintings, flipped his stereo set upside down, and dumped garbage on the floor. Ms. Crigler then returned to her apartment. She notified the police that Rolland was about to assault her, that he had a gun, and that warrants for his arrest on traffic violations were outstanding. The police arrested Rolland; he bailed out; and, she testified, the police told her they did not find his gun. Shortly after 2 a.m. on May 14, he obtained keys to Crigler's apartment from the apartment manager and was attempting to unlock the door when she shouted, "Keith, if it's you, get away, back off." Hearing no response, she shot blindly through the door. The projectile passed through his aorta and he died of acute hemorrhage within minutes.

The trial court's primary instruction on self–defense told the jury:

> To justify a killing in self–defense, there must be, or reasonably appear to be, *at or immediately before the killing* some overt act, or some circumstances which would reasonably indicate to the slayer that the deceased is, at the time, attempting to kill or inflict great bodily harm upon the slayer.
>
> The right of self–defense is given only in emergencies to enable persons who are attacked, and to whom it may reasonably appear that their lives are endangered or their bodies are in danger of great physical injury, to defend themselves. The right is limited to the emergency, and ends when the emergency ceases. The right is based upon

what a reasonable man or woman, having due regard for human life and safety, would do under similar circumstances.

A killing is not justified when made for the purpose of avenging insults, abuse or a previous assault which has ended, or for the purpose of settling an argument not involving physical safety.

(Italics ours.)

■ The clear import of this instruction is that the defense of self–defense was not available to Ms. Crigler unless *at or immediately before the killing,* Rolland committed some overt act which would reasonably indicate to her that he was attempting to inflict great bodily harm upon her. The lead opinion in *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977), asserted that in evaluating the gravity of the danger to the slayer, the jury must not be limited to a consideration *only* of those acts and circumstances occurring at or immediately before the killing. Likewise, the dissent in *Wanrow* also criticized the instruction which so limited the jury's understanding of the law of self–defense. The dissent, however, found no prejudicial error because another instruction cured the error. *State v. Wanrow, supra* at 246.

■ In the case at bench, we find no curative instruction. Indeed, the prosecution in its brief candidly acknowledges that Ms. Crigler's contention, as asserted on appeal, is supported by considerable authority. *See State v. Bradley,* 20 Wn. App. 152, 578 P.2d 1316 (1978); *State v. Ellis,* 30 Wash. 369, 70 P. 963 (1902). Instead, the prosecution asserts the precise flaw in the instruction was not pointed out to the trial court, either before it was presented to the jury or at the post–trial motion for a new trial. We find that assertion to be factually correct but not determinative of the issue. The gravity of the danger to Ms. Crigler must most certainly be measured by all the surrounding circumstances which had occurred during the several months preceding the slaying. That was the essence of her defense; without it, she had no defense. We hold that under the

facts of this case, most of which are uncontested, the erroneous instruction so deprived her of due process of law that manifest justice requires that we remand this case for new trial.

■ Many of the other assignments of error asserted by Ms. Crigler on appeal are not likely to recur on retrial. We are constrained to comment briefly, however, on some aspects of the appeal. Whenever it is necessary to instruct in terms of female or male gender, the better practice dictates that the instruction be worded to appropriately fit the particular case, rather than resorting to the combination "he or she" or "him or her." See, however, 11 WPIC preface 8 (1977) and RCW 9A.04.110(17). Nevertheless, we agree with the eminent trial judge who announced, while denying Crigler's motion for new trial, that it would be an insult to a jury to declare that they "might have gone wrong" because of occasional misuse of pronouns in the instructions.

Additionally, Ms. Crigler contends the trial court erred by refusing her proposed instruction to the jury in terms of the first paragraph of RCW 9.01.200. The entire section provides as follows:

> No person in the state shall be placed in legal jeopardy of any kind whatsoever for protecting by any reasonable means necessary, himself, his family, or his real or personal property, or for coming to the aid of another who is in imminent danger of or the victim of aggravated assault, armed robbery, holdup, rape, murder, or any other heinous crime.
>
> When a substantial question of self defense in such a case shall exist which needs legal investigation or court action for the full determination of the facts, and the defendant's actions are subsequently found justified under the intent of this section, the state of Washington shall indemnify or reimburse such defendant for all loss of time, legal fees, or other expenses involved in his defense.

We note, initially, that that paragraph was inserted into statutory law by means of a floor amendment to Engrossed

Substitute H. B. No. 615, the death penalty act of 1977. Senate Journal, 45th Legislature (1977), at 1998.

■ The thrust of RCW 9.01.200 is to declare that a person shall not be charged with a crime when he acts reasonably in defense of himself, his family, or his property, or when he comes to the aid of another person who is or is about to become the victim of certain violent or heinous crimes. In the event, nevertheless, that a person is so charged and a substantial question of self–defense (or defense of others or property?) exists, the statute provides him a civil cause of action for reimbursement of specified damages incurred in that defense.

The 1977 statute is a rather generalized summary of the law of self–defense and defense of persons and property. It was not intended to form the basis for, or a substitution of, the more specific instructions which are usually presented to a jury when such defenses are asserted by a defendant. In short, RCW 9.01.200 was not intended to modify RCW 9A.16.020, the detailed statutory authority on the use of force to repel an attack. Indeed, the law of self–defense in a criminal setting is not founded upon any subsequently obtained objective determination, after "full determination of the facts", that the actor's actions were justified by reason of the affirmative defense afforded by the law. In defense of a charge of assault or a homicide, a defendant's action is measured by the subjective determination of how reasonably the situation appeared to him at the time he acted in view of *all* the facts and circumstances. *State v. Lewis*, 6 Wn. App. 38, 491 P.2d 1062 (1971), and cases cited therein. We need not speculate what standard of reasonableness might be imposed in a civil action for damages.

If the proposed instruction was intended only as a general introductory instruction to the law of self–defense, the trial court accomplished that result much more appropriately by telling the jury:

> Homicide is justifiable when committed in the lawful defense of the slayer when there is reasonable ground to apprehend a design on the part of the person slain to do

some great personal injury to the slayer and there is imminent danger of such design being accomplished.

There was no error in refusing the proposed instruction in favor of what was intended to be, and on retrial will undoubtedly be, a more extensive presentation of the law of self–defense.

■ Finally, Ms. Crigler contends imposition of the mandatory 5–year minimum sentence, as required by RCW 9.41.025 because she was armed with or in possession of a firearm, constitutes cruel and unusual punishment. We have previously held otherwise in an armed assault which did not result in homicide. *State v. Atkinson,* 19 Wn. App. 107, 575 P.2d 240 (1978).

Judgment is reversed and the cause is remanded for new trial.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied September 7, 1979.

Review denied by Supreme Court November 30, 1979.